Nisha Wright (SBN: 202564)
nisha@wrightlawoffice.com
**The Wright Law Office, P.A.**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 393-3677

Manfred P. Muecke (SBN 222893)
**Manfred APC**
4225 Executive Square
Suite 600-6051
La Jolla, CA 92037
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIERSTEN RICHARDSON, individually and on behalf of all others similarly situated<br><br>                                    Plaintiff,<br><br>vs.<br><br>ALLIANCE PHARMA INC.<br><br>                                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kiersten Richardson ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Alliance Pharma, Inc ("Alliance" or "Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## **INTRODUCTION**

1. This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Alliance has asserted in connection with the sale of its allegedly "clinically proven" menopause supplement(s) marketed under the name Amberen[1].

2. The market for products designed to alleviate the symptoms of menopause represents a multi-billion dollar industry, with menopause supplements comprising a significant portion of this market.

3. However, menopause supplements have not been found to be an effective treatment for menopause. "Dozens of over-the-counter supplements are now being advertised to menopausal women as part of a $17 billion global market

---

[1] Alliance acquired the Amberen brand on December 19, 2019 (https://www.alliancepharmaceuticals.com/investors/investor-news-archive/latest-updates/2020/acquisition-of-biogix-inc/)

1

that's expected to grow more than 5% each year until at least 2030. The phenomenon has been dubbed "menowashing" for its propensity to convince consumers that menopause relief is as simple as popping a pill. But the growing market for "natural" therapies skirts over the fact that supplements don't require FDA approval, Harvard experts say. Many supplements also have not undergone rigorous testing. That means there's no evidence they actually work — or even that they're safe."[2]

4.     Companies continue to market these supplements as being able to reduce the symptoms of menopause. Consumers seeking relief for menopause symptoms are often targets for unethical manufacturers and advertisers. These consumers are often willing to pay a premium for dietary supplements that have been scientifically validated for efficacy.

5.     No menopause supplement has FDA approval, yet many of them use marketing claims that are reserved for drugs approved by the FDA. Scientists and consumer health advocates have warned that menopause supplement labels are misleading and that they do not work.[3]

6.     According to a position statement released by the Menopause Society in 2023, no dietary supplements or herbal remedies are deemed effective for

---

[2]     https://www.health.harvard.edu/womens-health/menopause-supplements-effective-relief-or-empty-promises

[3] Menopausal Symptoms: In Depth | NCCIH; The Menopause Society | Homepage, Menopause supplements: Effective relief or empty promises? - Harvard Health

2

alleviating menopause symptoms.[4]    Further, no one has identified a dietary supplement for hot flashes that is more effective than a placebo.[5]

7.    Additionally, the placebo effect is a significant factor in menopause aids, particularly as it relates to hot flashes, depression, and anxiety.[6]

8.    The Defendant has engaged in deceptive practices by making unfounded claims and misleading consumers into purchasing Amberen menopause supplements at a premium price, under the belief that they have been clinically proven to address the root cause of menopause symptoms and restore hormonal balance, thereby alleviating specific menopause symptoms. However, Amberen does not possess such ability. In short, the Plaintiff and members of the class were misled by the Defendant's fraudulent marketing of Amberen, resulting in financial gain for the Defendant at the expense of the Plaintiff and other class members.

9.    Plaintiff brings this action individually and on behalf of all other similarly situated consumers to halt Defendant's dissemination of this false and

---

[4]    https://menopause.org/wp-content/uploads/professional/2023-nonhormone-therapy-position-statement.pdf

[5]    https://www.health.harvard.edu/womens-health/menopause-supplements-effective-relief-or-empty-promises

[6]    https://news.web.baylor.edu/news/story/2023/magnitude-placebo-response-identified-drug-treatment-hot-flashes; https://pubmed.ncbi.nlm.nih.gov/19587583/

misleading advertising message, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Product(s) during the class period

## **JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

3.    The Court has personal jurisdiction over Defendant because Defendant sold its Amberen Advanced Menopause Relief Supplements and Amberen Menopause Relief Supplements (the "Products") to consumers in California, including to Plaintiff.

4.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Amberen supplements to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

4

## THE PARTIES

5.      Plaintiff is a natural person and a citizen of Riverside County, California.    Plaintiff purchased Amberen Menopause Relief Capsules from Walmart between December 2023 and early 2024 to alleviate her hot flashes due to menopause. Prior to her purchase, Plaintiff reviewed Defendant's advertising claims for the Product, including those on the product package, and made her purchase in reliance thereon.  Plaintiff specifically relied upon representations made by Defendant that the Product was clinically proven to provide relief from multiple menopause symptoms, including hot flashes.   Plaintiff reasonably relied on these representations and warranties in deciding to purchase the Product(s), and she would not have purchased the Products or would not have purchased them on the same terms, if the true facts had been known.  Plaintiff used the Products as directed on the label and experienced no relief from hot flashes. Plaintiff did not receive the promised benefits or the full value of her purchase. As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered and continues to suffer economic injuries.

6.      Defendant Alliance Pharma Inc. is and was, at all relevant times herein registered with the North Carolina Secretary of State as a Foreign Business Corporation with its principal executive office located at 11000 Regency Pkwy, Suite 106, Cary, NC 27518.

# **FACTUAL ALLEGATIONS**

7.      Defendant advertises that Amberen is clinically proven to relieve a variety of menopausal symptoms, including hot flashes, night sweats, fatigue, mood swings, weight gain, difficulty sleeping, irritability, and anxiety & stress. A large sampling of these deceptive advertisements and marketing for Amberen has been compiled by TINA.org.[7]  A few representative Amberen product advertising, packaging and labeling appear as follows:

 

---

[7] See https://truthinadvertising.org/evidence/amberen-menopause-claims/















8.      However, Defendant's clinical studies are not scientifically sound and fail to support the marketing claims made by Defendant.[8]

9.      In 2015, the Federal Trade Commission ("FTC") filed a complaint against Lunada Biomedical Inc ("Lunada"), the prior owner of the Amberen Brand, for permanent injunctive relief and other equitable relief.[9]

10.      On May 25, 2016, Lunada Biomedical entered into a Stipulated Order with the FTC ("FTC Order"). *See Fed.Trade Comm'n v. Lunada Biomedical, Inc.*, No. 2:15-cv-03380 (C.D. Cal. May 25, 2016), ECF No. 99. The FTC Order applies to Lunada and its Successor and assigns. *Id* at p. 3. Accordingly, the Order specifically prohibits Alliance from labeling, representing and advertising Amberen as able to:

> "Relieve[s] hot flashes, night sweats, irritability, mood swings, inability to concentrate, sleeplessness, lack of energy, decreased libido, stress, anxiety, weight gain, headache, or muscle or joint aches associated with menopause…unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product or of an Essentially Equivalent Product that is sufficient in quality and quantity, based on standards generally accepted by experts in the relevant disease,

---

[8]  https://truthinadvertising.org/wp-content/uploads/2024/10/10_1_24-Complaint-from-TINA-re-Amberen-Order-Violations.pdf

[9]  https://www.ftc.gov/system/files/documents/cases/150506lunadacmpt_0.pdf; FTC's First Amended Complaint was filed on December 2, 2015. *Lunada Biomedical, Inc.*, No. 2:15-cv-03380 (C.D. Cal. Dec. 2, 2015)

9

condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing shall (1) be randomized, double-blind, and placebo-controlled; and (2) be conducted by researchers qualified by training and experience to conduct such testing."

*Id* at pp 6-7.

11.    At the time of the FTC's action, the Amberen Menopause Relief product at issue contained the same active ingredients as the Amberen Advanced Menopause Relief product that is currently sold and marketed by Alliance.[10]

12.    Additionally, the scientific evidence that the Defendant relied upon during the Federal Trade Commission's action consisted of: a clinical trial conducted in Russia in 2001, a clinical trial carried out in Los Angeles in 2012, observational studies undertaken in Russia from 2001 to 2004, a clinical trial commissioned by Lunada's Russian supplier in 2015, as well as an advisory paper regarding a 2015 clinical trial. *See* First Amended Complaint for Permanent Injunction and Other Equitable Relief, ECF No. 75, *Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, No. 2:15-cv-03380 (C.D. Cal.)

---

[10]
https://web.archive.org/web/20150515061814/http://www.amberen.com/amberen-menopause-relief/;
https://www.amazon.com/Amberen-Multi-Symptom-Menopause-Clinically-Symptoms/dp/B007WW8LN2?ref_=ast_sto_dp&th=1

13.     Lunada funded two additional journal articles on the 2001 Russian Study that were published in 2007 and 2008. Id. ECF No. 75 at ¶ 24.  In the 2001 Russian Study, the physician evaluators assessed twenty distinct neurovegetative manifestations of menopausal symptoms, such as hot flashes and insomnia.  The findings published in both 2007 and 2008 indicated that **there was no statistically significant difference between the effects of Amberen and the placebo for any of these symptoms**. *Id.*

14.     Although Defendant claims its Product(s) are clinically proven, it does not provide the consumer with access to any of the alleged clinical trials. The website for Amberen is currently being updated and refers customers to explore its Brand Store on Amazon.com.[11]  In 2024, the Amberen website listed two clinical trials: (1) a 2016 clinical trial on Amberen Menopause Relief ("2016 Clinical Trial") and (2) a 2020 clinical trial on Amberen Perimenopause Relief ("2020 Clinical Trial") However, the Amberen website did not provide a link to the studies or the data.[12]

15.     The Amberen website does contain a video which features a recommendation from Dr. Debra DeMuth: "Only Amberen is a clinically proven

---

[11] https://amberen.com/

[12] https://web.archive.org/web/20240813045717/https://amberen.com/collections/clinical-research

11

dietary supplement that addresses the root cause of menopause symptoms."[13]  This is a patently false statement as other dietary supplements for menopause exist and have been clinically studied, and the Product does not address the biological root cause of menopause.

16.    The biological root cause of menopause is the natural decline of ovarian function and estrogen production.[14] Amberen's studies show, at most, modest changes in estradiol levels that are not clinically meaningful and do not restore ovarian function.

17.    The home page of the Amberen Brand Store on Amazon.com provides the following information related to the science supporting Amberen:

**Ingredients & formulas that are backed by science**

Amberen is deeply committed to scientific research and innovation, allowing us to develop safe, effective, clinically proven formulas that deliver maximum relief for as many women as possible. Amberen Advanced Perimenopause and Menopause Relief Supplements have:

 **45+** YEARS RESEARCH INTO MAIN INGREDIENTS

 **5** CLINICAL TRIALS

 **4** PUBLICATIONS

 **2** PATENTS

---

[13] https://amberen.com/

[14]                                                    https://www.who.int/news-room/fact-sheets/detail/menopause#:~:text=Menopause%20is%20one%20point%20in,stop%20releasing%20eggs%20for%20fertilization.

In tiny print at the bottom of the webpage, it states: "Amberen's products' clinical trials include three recent trials, two on Amberen Menopause dating from 2014-15 and 2015-16, and another on Amberen Perimenopause dating from 2019-2020."

18.    Under the product information for Amberen Menopause Supplements it states: "Real Science, Real Relief: Backed by 45+ years of research and 3 clinical trials, Amberen menopause supplements provide trusted results with science-backed ingredients."[15]

19.    Based on the Amberen website archives and the Amberen Amazon Brand Store it is unclear exactly how many clinical trials were actually conducted on the Amberen Menopause Supplement.  Like the Amberen website, the Amberen Brand Store on Amazon.com fails to provide the consumer with a link to the actual clinical trials. Further, none of the Product packaging directs the consumer to where the clinical trials can be found.

20.    The 2016 clinical trial referenced on the Amberen website is, in fact, a compilation of two separate but effectively identical studies [16]   Moreover,

---

[15]    https://www.amazon.com/stores/page/6F990587-BD61-4F7D-BC2A-B24920A10CBB?ingress=2&lp_context_asin=B007WW8LN2&visitId=83d0f4cc-5002-4a6a-ba71-ab89f9815f3d&store_ref=bl_ast_dp_brandLogo_sto&ref_=ast_bln

[16] See Viktor E. Radzinsky et al., Succinate-Based Dietary Supplement for Menopausal Symptoms: A Pooled Analysis of Two Identical Randomized, Double-Blind, Placebo Controlled Clinical Trials, 2019 Obstetrics and Gynecology Int'l (2019) at

13

Amberen relied on at least two clinical trials at the time of the FTC's action, both of which the Commission rejected.[17]  There is a strong inference that the clinical trial published in 2016 was based on the clinical trial commissioned by Lunada's Russian supplier in 2015 and the advisory paper regarding the 2015 clinical trial, both of which were reviewed by the FTC.

21.    Since the issuance of this Order in 2016, Defendant's misleading and unsubstantiated marketing practices concerning Amberen have persisted without interruption, despite multiple reminders from regulatory authorities regarding the necessity to adhere to FTC regulations. Notably, in April 2023, Alliance Pharmaceuticals received a Notice of Penalty Offenses Regarding the Substantiation of Product Claims from the FTC.[18]

22.    Amberen continues to market its menopause supplements to all menopausal women as a proprietary formulation that works by helping to restore hormonal balance. The Product(s) claim to relieve a broad spectrum of common menopausal symptoms such as hot flashes, night sweats, difficulty sleeping,

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6875258/pdf/OGI2019-1572196.pdf

[17]    https://truthinadvertising.org/wp-content/uploads/2024/10/10_1_24-Complaint-from-TINA-re-Amberen-Order-Violations.pdf

[18] https://www.ftc.gov/system/files/ftc_gov/pdf/Published-list-Recipients.pdf
https://www.ftc.gov/system/files/ftc_gov/pdf/Substantiaton-NPO.pdf

14

fatigue, mood swings, irritability, anxiety and stress, headaches, joint aches, difficulty concentrating, and menopausal weight gain.

23.    Based on Amberen's marketing, consumers assume that the Product(s) have been clinically proven to self-regulate hormones and provide relief for a multitude of menopause symptoms.

24.    A "clinically proven" standard means established, repeatable, and widely accepted evidence that supports a claim beyond a reasonable doubt. Consumers assume Amberen's clinically proven assertion means that the trials were conducted on a large scale on an ethnically diverse population of women over a period of time, and were independently conducted. Further, the term "clinically proven" leads consumers to believe the Products' clinical trials and results are unbiased, based on reliable methodologies and scientific evidence, and align with standards and scientific principles generally accepted by experts.

25.    Amberen's "clinically proven" assertion is false and misleading to consumers because Defendant failed to disclose:

(a) Amberen's clinical trials were involved only a small homogenous group of Caucasian women of Russian ancestry.

(b) The clinical trials were biased because they were funded by the manufacturer of Amberen and conducted in part by a paid consultant for the company that owned Amberen at the time.

15

(c) There are no clinical trials for the Amberen menopause relief gummies.

(d) The duration of the clinical trials was only 90 days (The Products are marketed as safe and effective, yet Defendant's clinical trials do not provide any information on the use of the Products beyond 90 days.)

(e) Significant baseline imbalances between the treatment and placebo groups existed for key menopausal symptoms such as hot flashes, depression, sleep difficulty, lack of sex drive, and anxiety. See FN 13, 2019 Amberen Study.

(f) The Amberen study relied solely on subjective self-reported questionnaires for the menopause symptoms of the participants in the study. The Amberen study did not include objective measures of hot flashes, sleep quality, or other physiological endpoints, nor did it evaluate hormone changes in a manner directly linked to symptom relief.

(g) The studies do not provide clinically meaningful results.

(h) The results of the studies are not based on universally accepted scientific principles.

26.     Defendant's own study design was flawed and inherently misleading. Women assigned to the treatment group entered the trial with substantially worse symptoms than those in the placebo group, including more severe anxiety, more frequent hot flashes, heightened depression, headaches, diminished sex drive, and

greater difficulty sleeping. Defendant nevertheless touted the study as "proof" of efficacy, despite knowing that these baseline imbalances would inflate perceived improvements in the treatment group. This was a predictable distortion: anxiety, depression, and hot flashes are well-documented to respond strongly to placebo.[19] By stacking the treatment group with participants predisposed to show greater placebo-driven improvement, Defendant manufactured the illusion of clinical benefit where none existed.   Although the pooled Amberen trial measured certain physiological parameters such as estradiol, FSH, LH, leptin, and anthropometrics, it did not include objective measures of hot flashes, sleep quality, or other functional endpoints, nor did it assess hormone changes in a way directly linked to symptom relief. The trial relied primarily on subjective self-assessments, leaving the observed effects vulnerable to placebo response, reporting bias, and regression to the mean.

27.    Defendant's reliance on this biased and unreliable study renders its "clinically proven" marketing claims patently false and deceptive. The supposed "clinical proof" does not prove efficacy of the product at all—it merely reflects

---

[19] The. N. Am. Menopause Soc'y, NAMS Position Statement, 30 Menopause 573, 574 (2023), https://www.menopause.org/docs/default-source/professional/2023-nonhormone-therapy-positionstatement.pdf
Margaret Diana van Die et al., Predictors of Placebo Response in a Randomized, Controlled Trial of Phytotherapy in Menopause, 16 Menopause 792 (2009), https://pubmed.ncbi.nlm.nih.gov/19587583/

predictable placebo responses magnified by Defendant's flawed study design. Reasonable consumers are misled into believing the product has been scientifically proven based on strong and reliable evidence, when in truth it has not been.

28.    Defendant's "clinically proven" claims are false and misleading. The only purported "clinical trials" were conducted by Defendant or its affiliates, on a small, homogeneous group of subjects, using flawed methodologies that do not meet generally accepted standards in the relevant scientific community. These inadequate studies do not prove the product's effectiveness. By representing that its supplement is "clinically proven" to provide relief, Defendant conveys to reasonable consumers a message that is misleading and false, as it has no reliable scientific basis.

## CLASS ACTION ALLEGATIONS

29.    Class Definition: Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**Nationwide Class**: All persons in the United States who purchased the Products during the fullest period of law.

In the alternative, Plaintiff brings this action on behalf of the following

**California Sub-Class**: All persons in the State of California who purchased the Products during the fullest period of law.

30.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

31.    **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes.   However, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

32.    **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

33.    **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a.  whether Defendant committed the conduct alleged herein;

19

b.  whether Defendant's conduct constitutes the violations of laws alleged herein;

c.  whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d.  whether Defendant knew or should have known that the representations were false or misleading;

e.  whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Amberen;

f.  whether Defendant's representations, concealments and non-disclosures concerning Amberen are likely to deceive reasonable consumers;

g.  whether Defendant's representations, concealments and non-disclosures concerning Amberen caused them to command a price premium in the market compared to similar products that do not make such misrepresentations.

h.  whether Defendant should be permanently enjoined from making the claims at issue; and

i.  whether Plaintiff and the Class are entitled to restitution and damages.

34.    With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated the

California Consumers Legal Remedies Act, California False Advertising Law as well as the California Unfair Competition Law.

35.    **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.    given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed

against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

36. **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

37. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I

**Violations of the California Consumers Legal Remedies Act (CLRA)
Cal. Civ. Code § 1750 *et seq*.
(on behalf of the California Subclass)**

38.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

39.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act ("CLRA"). The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

40.     Plaintiff and class members are "consumers" as defined by the CLRA. Cal. Civ. Code §1761(d). The Products are "goods" within the meaning of the CLRA. Cal. Civ. Code §1761(a).

41.     Defendant's sale and advertisement of its menopausal supplement Products constitute "transactions" within the meaning of the CLRA. Cal. Civ. Code § 1761(e).

42.     The CLRA prohibits unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer. Cal. Civ. Code § 1770(a).

43.     Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of Amberen primarily for personal, family, or

23

household purposes, and violated and continue to violate the following sections of the CLRA:

(a) Representing the goods and services have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

(b) Representing the goods and services are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7)); and

(c) Advertising goods and services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)).

(d) Representing that [goods] have been supplied in accordance with a previous representation when [they have] not. (Cal. Civ. Code § 1770(a)(16)).

44.    Plaintiff and members of the class are reasonable consumers who expected the Products to have the characteristics as represented and/or would have considered the omitted facts detailed herein material to their purchase decision.

45.    Defendant's representations regarding the Products were material to Plaintiff and members of the Class. Defendant intended Plaintiff and Class members would rely on these representations which they did.

46.    Defendant violated the CLRA by representing that its Amberen menopause supplement Products are clinically proven to address the root cause of menopause symptoms and provide relief, when, in reality, Amberen cannot

24

provide its advertised benefits. The studies relied upon by Defendant are flawed, and Amberen's ingredients are ineffective at improving, supporting, or relieving the symptoms of menopause as advertised.

47.     Defendant knew or should have known that its representations and advertisements regarding Amberen were false and misleading and that its omission of key factors of the clinical trials would alter any consumer's decision to purchase the Amberen Products.

48.      Defendant's violations of the CLRA proximately caused injury in fact to the Plaintiff and the Class.

49.     Plaintiff and the Class members purchased Defendant's Amberen Product(s) on the belief that the advertised menopause relief was "clinically proven" and they would receive the advertised relief from the Product(s). No consumer would purchase a menopause supplement unless she believed it was capable of providing meaningful relief to menopause symptoms.

50.     Due to Defendant's conduct and deceptive acts, Plaintiff and the Class suffered injury in fact in that the Products are not as advertised and are not worth the amount paid, and Defendant has deprived Plaintiff and the Class of the benefit of their bargain.

51.     Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the other members of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant.

52.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class seek injunctive and equitable relief for Defendant's CLRA violations. Concurrent with the filing of this Complaint, Plaintiff has mailed an appropriate demand letter as required under California Civil Code § 1782(a). If Defendant fails to take corrective actions within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for claims for actual, punitive, and statutory damages, as appropriate.

## COUNT II

**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(on behalf of the California Subclass)**

53.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54.     Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

55.     California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or

practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

56.    In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding Amberen Menopause Supplement Products in its advertising and labeling, including on the Products' packaging, as set forth more fully herein. There is no societal benefit from false advertising – only harm. Plaintiff and the other Class members paid for a product that is not capable of conferring the benefits promised. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

57.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. In the course of conducting business, Defendant committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the Products in its advertising, including on the Products' packaging

and labeling, as set forth more fully herein. Defendant made the misrepresentations and omissions regarding the efficacy of its Products, among other ways, by misrepresenting on each and every Product's packaging and labeling that the Products are effective when taken as directed, when, in fact, the representations are false and deceptive, and the Products are not capable of conferring the promised health benefits.

58.    Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

59.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

60.    Defendant knew, or should have known, that its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant for

Products that are incapable of actually relieving or benefiting menopause symptoms as marketed.

61.    As a result of its deception, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

62.    Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

63.    Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendant of all money obtained from Plaintiff and the other members of the Class collected as a result of Defendant's unfair competition, and for an injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, requiring corrective advertising, and awarding all other relief this Court deems appropriate.

## **COUNT III**

**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(on behalf of the California Subclass)**

64.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

65.     Defendant violated Cal. Bus. & Prof. Code section 17500 by using false and misleading statements, and material omissions, to promote the sale of the Product and otherwise "concerning any circumstance or matter of fact connected with the proposed performance or disposition of services."

66.     Specifically, Defendant made untrue or misleading representations that its Products are clinically proven to address the root cause of menopause symptoms and restore the hormonal balance, when, in reality, the Products have not been proven to provide the advertised benefits, and the Products' clinical trial results have been misrepresented to consumers.

67.     Plaintiff and the Class members relied to their detriment upon Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and the members of the Class been adequately informed and not intentionally deceived by Defendant, they would have refrained from purchasing the Class Products or paid less for them.

68.     Defendant's acts and omissions are likely to deceive the general public.

69.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

70.     Defendant engaged in these false, misleading, and deceptive advertising practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by Section 17500, *et seq*. of the California Business and Professions Code.

71.     As a direct and proximate result of Defendant's untrue and misleading advertising, Plaintiff and the Class members have suffered injury in fact and have lost money.

72.     Accordingly, Plaintiff requests that the Court order Defendant to restore the money Defendant has received from Plaintiff and the members of the Class, and that the Court enjoin Defendant from continuing its unlawful practices, and engage in corrective advertising.

## COUNT IV

**Unjust Enrichment**
**(On behalf of the Nationwide Class or,**
**in the alternative, the California Subclass)**

73.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

74.     Plaintiff and the Class Members conferred benefits on Defendant by purchasing the Products.

75.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Class Members' purchases of the Products. Retention of

those monies under these circumstances is unjust and inequitable because Defendant misrepresented the clinical trials and the benefits of the Products. These omissions and misrepresentations caused injuries to Plaintiff and the Class Members because they would not have purchased the Products if the true facts were known.

76.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

77.    In accordance with Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any opposing allegations stated within their other causes of action, should such causes of action prove to be unsuccessful. If Plaintiffs and the Class cannot obtain relief under their other causes of action—whether because those claims require proof of reliance, materiality, or intent—unjust enrichment provides an adequate remedy. Unlike other claims, unjust enrichment imposes liability regardless of Defendant's intent or good faith, and restitution offers a more direct and efficient remedy. Defendant has been unjustly enriched by retaining the full purchase price of the Products obtained through omissions and misrepresentations. Restitution of the purchase price will restore Plaintiff and the Class to the position they would have been in had Defendant not engaged in wrongful conduct. As a result, Plaintiff and the Class

seek disgorgement of Defendant's wrongful profits, restitution, interest, and such further relief as the Court deems just and proper.

## COUNT V

### Breach of Express Warranty
### (On behalf of the Nationwide Class)

78.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

79.    As the manufacturer, marketer, and advertiser of the Products, Defendant issued an express warranty by representing that the Products are a clinically proven dietary supplement that addresses the root cause of menopause symptoms, helping to restore hormonal imbalance. However, this claim has not in fact been clinically proven.

80.    Defendant's representations were part of the basis of the bargains upon which the goods were offered for sale and purchased by Plaintiff and the members of the Class.

81.    As a direct and proximate result of Defendant's breach, Plaintiff and the members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Defendant had advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented.

Had Defendant not breached its express warranty by making the false representations alleged herein, Plaintiff and the members of the Class would not have purchased the Products or would not have paid as much as they did for them.

82.    As a result, Plaintiff and the members of the Nationwide Class suffered and continue to suffer damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT VI

### Breach of Implied Warranty
### (On behalf of the Nationwide Class)

83.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

84.    Defendant, as the manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that the Products contained ingredients clinically proven to address the root cause of menopause and help restore hormonal balance which would provide relief to certain menopause symptoms.

85.    These representations and implied warranties are false given that the clinical trials on Amberen do not support its claims that the Products are clinically proven.

86.    As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and members of the Nationwide Class have been injured and

34

harmed because they would not have purchased the Products, or would have paid substantially less for them, if they had known that the Products were not clinically proven and capable of addressing the root cause of menopause symptoms to restore hormonal balance, thereby providing relief for the advertised menopause symptoms. Thus, Plaintiff and members of the Classes overpaid for the Product.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully prays for the following relief:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. A declaration that Defendant's actions, as described herein, violate the claims alleged herein;

C. Directing that Defendant bears the costs of any notice sent to the Class(es);

D. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

E. Awarding restitution and other appropriate equitable relief;

35

F.  Granting an injunction against Defendant to enjoin them from conducting their business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

G.   Ordering a jury trial and damages according to proof;

H.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I.   Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J.   Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K.  Ordering such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a jury trial with respect to all issues triable of rights by jury.

DATED: September 23, 2025

**The Wright Law Office, P.A.**

*s/ Nisha Wright*
Nisha Wright (SBN: 202564)
nisha@wrightlawoffice.com
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 393-3677

**Manfred, APC**
Manfred Muecke (SBN: 222893)
4225 Executive Square
Suite 600-6051
La Jolla, CA 92101-3370
mmuecke@manfredapc.com
Phone: 619-550-4005
Fax: 619-550-4006

37